IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TOLEKSIS BIIN TUTORA, | : | |
| Petitioner, | : | CIVIL ACTION NO. 16-mc-195 |
| v. | : | |
| U.S. ATTORNEY GENERAL FOR THE EASTERN DISTRICT OF PENNSYLVANIA, | : | |
| Respondent. | : | |

## MEMORANDUM OPINION

Smith, J.                                                                                                                                      May 16, 2017

An inmate in the Philadelphia Prison System has filed an "expatriation petition" in which he seeks to renounce his United States citizenship. The respondent has moved to have the court dismiss the petition because the petitioner failed to comply with the applicable statute and administrative procedures insofar as he failed to file a renunciation request with the appropriate federal agency. The petitioner responded to the motion by filing two motions in which he seeks to have the court enter a default judgment against the respondent.

As discussed in more detail below, the court will grant the motion to dismiss because the petitioner has improperly attempted to avoid the proper procedure for renouncing citizenship by filing this action in federal court. Instead of filing this action, the petitioner could only submit his renunciation request to the United States Citizenship and Immigration Services, which was the appropriate federal agency to consider the petition in the first instance. In addition, because the petitioner has yet to seek relief with the appropriate federal agency, he cannot maintain a claim under the Administrative Procedure Act or seek mandamus relief.

Concerning the petitioner's motions for default judgment, the petitioner has asserted no cognizable basis that would justify granting those motions in his favor. Therefore, the court will also deny both motions.

I. PROCEDURAL HISTORY

The *pro se* petitioner, Toleksis Biin Tutora ("Tutora"), commenced this action by filing a purported application to proceed *in forma pauperis* and an "Expatriation Petition" that the Clerk of Court docketed on October 5, 2016. Doc. No. 1. The petition names the United States Attorney General for the Eastern District of Pennsylvania as the respondent. *Id.*

In the petition, Tutora alleges that he is currently detained in the Philadelphia Prison System and is "also a probationer of the Lehigh Adult Parole/Probation Department."[1] Expatriation Pet. at ECF p. 1. Tutora asserts that "[t]he lost [sic] of employment, constant homelessness, variant degrees of cloaking to fit in amongst other coloreds have become confusing and detrimental to his success as a collegiate aspirant." *Id.* at ECF p. 2. Due to these complaints, Tutora seeks to renounce his United States' citizenship under 8 U.S.C. § 1481 and become a citizen of Romania.[2] *Id.* Tutora wants to become a citizen of Romania because it has the "deep roots and culture suitable for his spiritual referum [sic] and religious needs." *Id.*

---

[1] In the petition, Tutora states that he is incarcerated at the Curran-Fromhold Correctional Facility ("CFCF"). *See* Expatriation Pet. at ECF p. 2.

[2] Tutora also appears to assert that other federal statutes, namely 8 U.S.C. § 1448 and 18 U.S.C. §§ 4103, 4104, 4017, and 4108, apply to the petition and provide bases for his requested relief. *See* Expatriation Pet. at ECF p. 3. The court has not considered these statutes in resolving the motion to dismiss because they do not apply to the expatriation petition. In particular, 8 U.S.C. § 1448 pertains to the oath of renunciation and allegiance for individuals seeking naturalization in the United States and does not apply here because Tutora is not seeking naturalization in the United States. *See, e.g.*, 8 U.S.C. § 1448(a) (discussing public ceremony for "[a] person who has applied for naturalization" and discussing required oath). 18 U.S.C. § 4103 provides that "[a]ll laws of the United States, as appropriate, pertaining to prisoners, probationers, parolees, and juvenile offenders shall be applicable to offenders transferred to the United States, unless a treaty or this chapter provides otherwise." *Id.* This statute does not apply because Tutora does not allege that he is an offender that was transferred to the United States. 18 U.S.C. §§ 4104, 4017, and 4018 generally addresses transfers of offenders to and from the United States. *See* 18 U.S.C. § 4104 ("Transfer of offenders on probation"); 18 U.S.C. § 4107 ("Verification of consent of offender to transfer from the United States"); 18 U.S.C. § 4108 ("Verification of consent of offender to transfer to the United States"). Section 4108 would not apply in any event because Tutora is already in the United States, and sections

2

In further support of his petition, Tutora avers as follows:

> [T]hough [I am] aware that the U.S.S.R. is the political venue that abounds in the region [around Romania], [I] by no means seek[] adversity, but genuine intellectual growth and comparison that under the F.I.A. compact, sees his entrepenuarial [sic] growth nothing short of excellence. He is well aware that linguistic and intellectual exchanges may at points be at point a slow turn, but is not deterred from his goal of optimum successes. So his renunciation, pursuant to Title section 1481 et. seq., is an honorable gesture to qualm his national homeland and not flag any intelligence community that may premonition subversity [sic]. The growth of the world and its bounderies [sic] that are flawed are potent due to the lack of education, not subversion.

*Id.* at ECF pp. 2-3.

Because Tutora did not pay the filing fee for miscellaneous actions or file a completed motion for leave to proceed *in forma pauperis*, the court entered an order on November 2, 2016, which required him to either pay the filing fee or file a proper application to proceed *in forma pauperis*. Order, Doc. No. 2. In response to the court's order, Tutora filed a "Declaration and Explanation in Support of Motion to Proceed in Forma Pauperis" that the clerk of court docketed on November 21, 2016. Doc. No. 3. As this submission was also insufficient for the court to evaluate whether to grant Tutora leave to proceed *in forma pauperis*, the court entered another order on November 28, 2016, requiring him to either pay the filing fee or submit a completed *in forma pauperis* application with the requisite certified prisoner account statement. Order, Doc. No. 4.

Instead of reapplying for leave to proceed *in forma pauperis*, Tutora paid the filing fee on January 3, 2017. *See* Unnumbered Docket Entry Between Doc. Nos. 4 and 5. Shortly thereafter,

---

4104 and 4017 do not apply because there is no indication that the government is attempting to transfer Tutora to another country. These provisions also do not allow Tutora to request to have the government transfer him to another country to serve his sentence. Instead, these statutes merely discuss parts of the procedure for such transfers. Furthermore, even if Tutora stated a cognizable claim here, and even if the court (or the applicable agency) could and would grant Tutora's request and allow him to renounce his United States' citizenship, there is no indication that he would be transferred to another country (much less the country of his choosing) to serve his sentence instead of having to serve the remainder of his sentence in the United States before potentially being deported.

the court entered an order requiring the Clerk of Court to serve a copy of the order and the expatriation petition on the respondent by certified mail. Order, Doc. No. 5.

The respondent moved for an extension of time to file a response to the petition, which the court granted on January 26, 2017. Doc. Nos. 6, 7. The respondent then filed the instant motion to dismiss the petition under Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure on February 22, 2017. Doc. No. 10. Although Tutora did not file a timely response to the motion to dismiss, he did file two documents that the clerk of court docketed on March 22, 2017: a "Motion for Default Judgment" and a "Motion Sustaining Default Motion." Doc. Nos. 11, 12.

The motion to dismiss is ripe for disposition.

## II. DISCUSSION

### A. Standards of Review

#### 1. Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests "the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). As the moving party, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

In general, a complaint is legally sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The touchstone of [this] pleading standard is plausibility." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

Although Rule 8(a)(2) does "not require heightened fact pleading of specifics," it does require the recitation of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Thus, to survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 570). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[3] *Id.* (quoting *Twombly*, 550 U.S. at 555).

The Third Circuit employs a three-step approach to evaluate whether a complaint satisfies the *Twombly/Iqbal* standard:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S.Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (internal footnote omitted).

---

[3] The court is mindful that no matter how "inartfully pleaded, [*pro se* complaints] must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Despite this more liberal pleading standard, a *pro se* complaint must still contain "'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Maxberry v. Sallie Mae Educ. Loans*, 532 F. App'x 73, 75 (3d Cir. 2013) (per curiam) (quoting *Iqbal*, 556 U.S. at 678).

## 2. Rule 12(b)(1) Motion to Dismiss

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Id.* (citations omitted). "[F]ederal courts are without power to adjudicate the substantive claims in a lawsuit, absent a firm bedrock of jurisdiction." *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977). Therefore, "[w]hen the foundation of federal authority is, in a particular instance, open to question, it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition of the merits." *Id.*

"[A] court must grant a motion to dismiss [under Rule 12(b)(1)] if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). "In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack." *Id.* (citation omitted). A jurisdictional challenge is factual if "it concerns not an alleged pleading deficiency, but rather the actual failure of [the plaintiff's] claims to comport with the jurisdictional prerequisites[.]" *U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (quotation marks and citation omitted). A jurisdictional challenge is facial if it "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (citations and internal quotation marks omitted). On the other hand, "a factual challenge attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Achiele*, 757 F.3d 347, 358 (3d Cir. 2014)). When a jurisdictional

challenge is factual, a court may "weigh and consider evidence outside the pleadings." *Id.* (citation and internal quotation marks omitted).

### B. Analysis

In the motion to dismiss, the respondent claims that the court should dismiss the petition because (1) Tutora has failed to seek to renounce his citizenship by submitting a request before the competent administrative agency, namely the United States Citizenship and Immigration Services ("USCIS"), (2) Tutora has not alleged that he submitted a petition to renounce to any agency, including USCIS, the Department of Homeland Security, or the Department of State, (3) the court cannot grant Tutora's request and is otherwise without jurisdiction to remove Tutora to the foreign country of his choice, (4) Tutora has no cause of action under the Administrative Procedures Act because he has not sought any administrative action insofar as he has yet to seek renunciation of United States' citizenship from USCIS and, thus, there has been no agency action unlawfully withheld and no final agency action for the court to review, and (5) Tutora has failed to exhaust his administrative remedies because he has failed to submit a request with USCIS. *See* Defendant's Mem. of Law in Supp. of Mot. to Dismiss the Compl. Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Def.'s Mem.") at 4-8, Doc. No. 10. It appears that in response to the motion to dismiss, Tutora filed the above-referenced motions seemingly pertaining to a default judgment.[4]

With respect to these motions, it appears that in his "Motion for Default Judgment," Tutora claims, without explanation, that the respondent's filing of the motion to dismiss violated his constitutional rights. *See* Motion for Default J. at 1 (stating that "[c]ontrary to Fact of Law, the Plaintiff's 5th and 14th amendment and constitution [sic] rights were intentionally violate

---

[4] In the motions, Tutora changes the respondent in the caption to United States Attorney General Jeff Sessions. *See* Doc. Nos. 11, 12.

[sic]" by counsel for respondent filing a motion to dismiss), Doc. No. 11. He seems to argue that upon receipt of his petition, the respondent would "give **FACT OF LAW** and proceed to forward that document to the Secretary of the Department of State Tillerson, to wit forwarded to Immigration and Naturalization for **HOST chosen by Plaintiff and back to the U.S. Attorney General office for the Eastern District of Pennsylvania**." *Id.* (emphasis in original). Since the respondent has not done so, Tutora requests that the court "**DEEM JUST AND PROPER THAT THE** [sic] **ATTORNEY GENERAL SESSIONS AND THE** [sic] **DEPARTMENT OF THE STATE TILLERSON MOVE FORWARD PER THE DECLARATION KNOWINGLY AND INTELLIGENTLY SUBMITTED** [and] **COMPLETE HIS EXPATRIATION PETITION**."[5] *Id.* at 2 (emphasis in original).

In his "Motion Sustaining Default Motion," Tutora appears to provide additional guidance regarding the purpose of his expatriation petition. In this document, Tutora indicates that he did not intend for the petition to be construed as a complaint; instead, "[h]is intent was by Law [sic] pursuant [to] title 8 section 1481 subsections [sic] (a)(6) for the respondent to properly route his request for a **RENOUNCEMENT CEREMONY**, covered in a EXPATRIATION PETITION." Motion Sustaining Default Mot. at ECF p. 1, Doc. No. 12; *see id.* at ECF p. 2 ("[P]etitioner . . . was at no time a plaintiff seeking relief. It was the determination of [the respondent's counsel] to revert an E-Document of a petition, to a complaint, obscuring his intent of a civil petition pursuant to [8 U.S.C. § 1481(a)(6) and 8 U.S.C. § 1483(c)]."). In addition, Tutora appears to dispute that he needed to pursue any administrative channels insofar as he asserts that he "does now ascertain that he should ha[ve] informed the [respondent's counsel] that her E-document was in error and if by Law [sic] he was after a criminal history check

---

[5] Tutora appears to have also evidenced a desire to become a citizen of Ireland. *See* Motion for Default J. at ECF p. 3 ("To where now he has the rights still to chose a Host, which has been decide to seek **IRELAND**." (emphasis in original)).

concern for the HOMELAND SECURITY ACT of 2002, then his expatriation would have to go through administrative channels." *Id.* Tutora also claims that the Homeland Security Act of 2002

> has direct involvement, checking Interpol for violent and sexually deviant acts. This intimately concerns petitioner: (1) petitioner is an inactive vetted **National Intelligence Services Crypto logical Science** graduate 1981, with a Top Secret **Umbra** clearance, to wit seeing duality of his identification since 1984, expected O.I.L. to inform **N.I.S., D.I.A.**, and all other pertinent **Defense Intelligence Agencies**, of such discrepancy to assure that there was no imposter or **Foreign Intelligence Cell**, thus having the U.S. Attorney's [sic] of the Eastern District of Pennsylvania make certain that the petitioner . . . was in fact who he claimed to be, and not an **Undocumented Foreign Alien or Cell**.

*Id.* at 2-3 (emphasis in original).

Although unclear from his initial expatriation petition, the two above-reference motions evidence Tutora's intent that this petition serve as his request to renounce under 8 U.S.C. § 1481(a)(6) and that somehow this action is the vehicle by which he can achieve his goal of renunciation. Tutora is mistaken.

Congress recognized a right to expatriate in the Expatriation Act of 1868, which "declared that expatriation was the natural and inherent right of all people." *Klaudt v. Dooley*, No. CIV. A. 10-4091-KES, 2010 WL 5391571, at *4 (D.S.D. Dec. 22, 2010) (citing An Act Concerning the Rights of American Citizens in Foreign States, ch. 249, 15 Stat. 223 (1868)). "'The stated purpose of the Act was to protect naturalized citizens of the United States while in foreign jurisdictions.'" *Id.* (quoting *People v. Jones*, 140 P.3d 325, 327 (Colo. App. 2006)). The Expatriation Act did not "provide rights to someone who has renounced his United States citizenship; rather, it [wa]s intended to provide protections for naturalized American citizens abroad." *Id.*

Since the passage of the Expatriation Act, the Supreme Court has acknowledged that "a citizen has the right to abandon or renounce his citizenship and Congress can enact measures to regulate and affirm such abjuration."[6] *Nishikawa v. Dulles*, 356 U.S. 129, 139 (1958); *see also Vance v. Terrazas*, 444 U.S. 252, 265 (1980) ("Nor do we agree with the Court of Appeals that, because under [*Afroyim v. Rusk*, 387 U.S. 253 (1967)] Congress is constitutionally devoid of power to impose expatriation on a citizen, it is also without power to prescribe the evidentiary standards to govern expatriation proceedings."). "Congress has broad authority over the conditions and procedures which must be satisfied to expatriate." *Koos v. Holm*, 204 F. Supp. 2d 1099, 1107 (W.D. Tenn. 2002) (citing *Davis v. District Director, INS*, 481 F. Supp. 1178, 1183-84 n. 8 (D.D.C. 1979); *Tomasicchio v. Acheson*, 98 F. Supp. 166, 169 (D.D.C. 1951)).

Through the Immigration and Nationality Act, 8 U.S.C. § 1481, Congress has set forth certain procedures for voluntary expatriation. *See* 8 U.S.C. § 1481(a)(1)-(7). More specifically, section 1481 provides that a United States national "shall lose his nationality by voluntarily performing" one of seven expatriating acts "with the intention of relinquishing United States Nationality." 8 U.S.C. § 1481(a). The first five of the seven expatriating procedures are inapplicable here because they require the individual seeking renunciation to be located in a foreign state and Tutora is located in Pennsylvania. *See* 8 U.S.C. § 1481(a)(1)-(5). Thus, only subsections (a)(6) and (a)(7) are potentially applicable.[7]

---

[6] The right to renounce is based in statute and is not "rooted in the Constitution." *See Vance v. Terrazas*, 444 U.S. 252, 265 (1980) ("*Nishikawa* was not rooted in the Constitution.").

[7] 8 U.S.C. § 1483(a) addresses "[r]estrictions on loss of nationality" and provides as follows:

> Except as provided in paragraphs (a)(6) and (7) of section 1481(a) of this title, no national of the United States can lose United States nationality under this chapter while within the United States or any of its outlying possessions, but loss of nationality shall result from the performance within the United States or any of its outlying possessions of any of the acts or the fulfillment of any of the conditions specified in this Part if and when the national thereafter takes up a residence outside the United States and its outlying possessions.

10

Subsection (a)(7) is inapplicable because it requires the person to have "committ[ed] any act of treason against, . . . attempted by force to overthrow, or bear[ed] arms against[] the United States." 8 U.S.C. § 1481(a)(7). Therefore, only the sixth procedure is potentially applicable here. It provides that the person seeking to renounce United States citizenship must make

> in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense[.]

8 U.S.C. § 1481(a)(6).[8] Although this subsection "refers to the Attorney General, this authority has since been transferred to the Secretary of Homeland Security."[9] *Kwon Sze v. Johnson*, 172 F. Supp. 3d 112, 118 (D.D.C. 2016) (citing *Turner v. Beers*, 5 F. Supp. 3d 115, 119 (D.D.C. 2013) and 6 U.S.C. § 557).

---

*Id.*

[8] Tutora does not mention subsection (a)(6) in his petition; instead, he references subsections (5) and (b). *See* Expatriation Pet. at ECF p. 3. Subsection (b) appears to be inapplicable here because the first sentence discusses the burdens of production and proof if the "loss of United States nationality is put in issue in any action or proceeding." *See* 8 U.S.C. § 1481(b) ("Whenever the loss of United States nationality is put in issue in any action or proceeding commenced on or after September 26, 1961 under, or by virtue of, the provisions of this chapter or any other Act, the burden shall be upon the person or party claiming that such loss occurred, to establish such claim by a preponderance of the evidence."). As already stated, Tutora does not appear to state that he has already lost his United States nationality by committing any of the voluntary acts in subsections (1) through (7) of section 1481(a); instead, he appears to seek to have the United States Attorney General for the Eastern District of Pennsylvania (the court presumes that he is referring to the United States Attorney for the Eastern District of Pennsylvania) determine that he has renounced his nationality.

In addition, the second sentence of subsection (b) provides for a rebuttable presumption that anyone who committed any of the seven expatriating acts in subsection (a) did so voluntarily. *See id.* ("Any person who commits or performs, or who has committed or performed, any act of expatriation under the provisions of this chapter or any other Act shall be presumed to have done so voluntarily, but such presumption may be rebutted upon a showing, by a preponderance of the evidence, that the act or acts committed or performed were not done voluntarily."). Tutora has not alleged that he has completed any of the expatriating acts in subsection (a), so the second sentence of subsection (b) is also inapplicable here.

[9] The respondent asserts that although "[t]he bulk [of] the loss of nationality provisions under 8 U.S.C. § 1481(a) are administered by [the Department of State]," the United States Citizenship and Immigration Services ("USCIS") currently administers renunciation requests inside the United States (such as those based on section 1481(a)(6)) on behalf of the Department of Homeland Security ("DHS"). *See* Def.'s Mem. at 5. Other district courts have also found that USCIS is responsible for these renunciation requests. *See, e.g.*, *Evans v. United States*, No. CIV. A. 12-677, 2012 WL 569705, at *1 (E.D. Pa. Feb. 22, 2012) ("Therefore, if [the plaintiff] seeks to renounce his citizenship, he must take his renunciation request to the appropriate agency, which appears to be [USCIS]."); *Kaufman v. Holder*, 686 F. Supp. 2d 40, 42 (D.D.C. 2010) ("After remand, the [Attorney General, the Secretary of the Department of Homeland Security, and the Secretary of State] took the position that the Director of USCIS is responsible for administering § 1481(a)(6), a position that [the plaintiff] has ceased to dispute.").

Here, despite Tutora's apparent claim that he can bring an expatriation petition before this court and get the relief he seeks, he has failed to state a claim upon which relief can be granted for the following reasons:[10] First, this court is not the proper forum for Tutora to seek to renounce his citizenship. Section 1481(a)(6), the only statute Tutora references that is potentially applicable here, directs that Tutora must submit his formal renunciation request "before such officer as may be designated by, the Attorney General." 8 U.S.C. § 1481(a)(6). This statute does not provide the court with the power to grant Tutora's request to renounce his citizenship. It also does not direct that the court is the proper forum for submitting a renunciation petition. Bringing this action seeking renunciation in federal court is not the same as making the renunciation request before the appropriate officer designated by the Attorney General, namely, the Director of USCIS. Even if it was, Tutora has not named the Director of USCIS as a respondent and he cannot obtain relief from the respondent.

In addition, Tutora has not alleged that he has submitted a renunciation request to the Director of USCIS or, if he had, that USCIS failed to respond to his request or otherwise

---

[10] Although not discussed by the respondent in the motion to dismiss, section 1481(a)(6) is applicable only "whenever the United States shall be in a state of war." 8 U.S.C. § 1481(a)(6). "Congress did not specifically define the term 'state of war' for purposes of § 1481(a)(6)." *Kaufman*, 686 F. Supp. 2d at 43. In addition, neither the Supreme Court nor the various Courts of Appeals have addressed the meaning of the phrase "state of war" in section 1481(a)(6). The district courts that have discussed this issue have come to conflicting decisions. *Compare Keene v. United States Dep't of Homeland Sec.*, No. 3:16cv94/LC/CJK, 2016 WL 2343250, at *3 (N.D. Fla. Apr. 22, 2016) ("Plaintiff cannot avail himself [of subsection (a)(6)] . . . because the United States is not 'in a state of war'"), *R. & R. adopted by*, 2016 WL 2343857 (N.D. Fla. May 3, 2016), *and Hood v. United States*, No. 2:11CV334-WKW, 2011 WL 6440511, at *1 (M.D. Ala. Dec. 2, 2011) (concluding that plaintiff could not renounce citizenship under subsection (a)(6) because the United States was not in a state of war), *and Persson v. United States Dep't of State*, No. ED CV-11-0377-GAF (PJW), 2011 WL 1464387, at *2 (C.D. Cal. Mar. 22, 2011) ("Plaintiff's letters to the State Department did not meet the requirements of § 1481(a)(6) because the United States is not at war."), *and Koos v. Holm*, 204 F. Supp. 2d 1099, 1108 (W.D. Tenn. 2002) ("Contrary to Koos' belief, the United States is not in a state of war and § 1481(a)(6) is presently inoperative."), *with Kwon Sze v. Johnson*, 172 F. Supp. 3d 112, 118 (D.D.C. 2016) (assuming without deciding that the United States was in a state of war, but noting differing opinions on the subject), *and Turner v. Beers*, 5 F. Supp. 3d 115, 119 (D.D.C. 2013) ("The Government does not contest that we are 'in a state of war,' which is a prerequisite for § (a)(6) to be operative"), *and Kaufman*, 686 F. Supp. 2d at 43-44 (concluding that by applying the plain meaning of "state of war" in subsection (a)(6), the United States was in a "state of war" in 2004 and 2008 when the plaintiff made his renunciation requests). The court notes that Black's Law Dictionary defines a "state of war" as "[a] situation in which war has been declared or armed conflict is in progress." *State of War*, Black's Law Dictionary (10th ed. 2014). For purposes of this opinion, the court presumes without deciding that the United States is in a "state of war."

prevented him from renouncing his citizenship. These failures preclude this action in federal court. *See Evans v. United States*, No. CIV. A. 12-677, 2012 WL 569705, at *1 (E.D. Pa. Feb. 22, 2012) (concluding *pro se* plaintiff failed to state claim against the United States where he attempted to "seek a ruling from this Court in the first instance" on his request to renounce his citizenship instead of making the request before USCIS in the first instance); *Walker v. Holder*, 714 F. Supp. 2d 44, 48 (D.D.C. 2010) ("In the absence of a request obligating the defendant agencies to act, the Court finds that the complaint fails to state a claim upon which relief can be granted under the [Administrative Procedure Act], the mandamus statute or the Declaratory Judgment Act.").

Second, Tutora's submissions clarify that he is seeking to have the court direct agency action by having his renunciation petition directed to the proper governmental official, whom would then grant him a renunciation ceremony. Essentially, it appears that Tutora is seeking mandamus relief.

To the extent that Tutora is seeking mandamus relief, "district courts . . . have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or an agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Tutora is entitled to relief under section 1361 "only if he has exhausted all other avenues of relief and only if the defendant owes him a clear, nondiscretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 616 (1984). Tutora "must allege that an officer of the Government owes him a legal duty which is a specific, plain ministerial act 'devoid of the exercise of judgment or discretion.' An act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt." *Harmon Cove Condo. Ass'n, Inc. v. Marsh*, 815 F.2d 949, 951 (3d Cir.

1987) (quoting *Richardson v. United States*, 465 F.2d 844, 849 (3d Cir. 1972) (en banc), *rev'd on other grounds*, 418 U.S. 166 (1974)).

As already explained, Tutora has not alleged that he exhausted his administrative remedies by submitting his request to renounce his United States citizenship to the Director of USCIS. Additionally, it appears that even if Tutora had exhausted his administrative remedies, the only relief he would be entitled to would be for the government to respond to his renunciation request. *See Kwok Sze*, 172 F. Supp. 3d at 119 ("[C]ourts have frequently held that the only ministerial duty owed by USCIS under [s]ubsection (a)(6) is to respond to the renunciant's request." (citing *Turner*, 5 F. Supp. 3d at 119; *Sluss v. United States Citizenship & Immigration Servs.*, 899 F. Supp. 2d 37, 41 (D.D.C. 2012); *Schnitzler v. United States*, 863 F. Supp. 2d 1, 3 (D.D.C. 2012), *rev'd on other grounds*, 761 F.3d 33 (D.C. Cir. 2014)), *aff'd sub nom.*, *Kwok Sze v. Kelly*, No. 16-5090 (D.D.C. 2017).[11] The court could not require the government to issue a certificate of loss of nationality because it "is a discretionary act beyond the jurisdiction of the Mandamus Act." *Id.* (citations omitted); *see also Lozada Colon v. United States Dep't of State*, 2 F. Supp. 2d 43, 45 (D.D.C. 1998) (addressing "a quasi-constitutional argument that the Secretary [of State] must approve his certificate [of loss of nationality under 8 U.S.C. § 1481(a)(6)] because of his inherent, natural right to expatriate," by pointing out that "even if one were to concede Plaintiff's argument that an individual has a fundamental right to

---

[11] In *Kwok Sze*, the district court also addressed an argument that the Court of Appeals for the District of Columbia Circuit's opinion in *Schnitzler v. United States*, 761 F.3d 33 (D.C. Cir. 2014) rejected the proposition that potential mandamus relief would only pertain to the ministerial duty of USCIS responding to the renunciation request. 172 F. Supp. 3d at 119. The *Kwok Sze* court reviewed the *Schnitzler* decision and concluded that "[t]he Court of Appeals did not directly address the district court's substantive analysis of the plaintiff's mandamus claim." *Id.* (citing *Schnitzler*, 761 F.3d at 37-39). Instead, the Court of Appeals only concluded that "the district court erred by dismissing the case without evaluating the merits of plaintiff's claims under the [Administrative Procedure Act]." *Id.* (citing *Schnitzler*, 761 F.3d at 38-39). Thus, the district court found "that *Schnitzler* does not alter the mandamus analysis performed in a lineage of similar cases—all of which deny requests for mandamus relief by plaintiffs who seek to renounce their U.S. citizenship while incarcerated." *Id.* (citing *Turner*, 5 F. Supp. 3d at 119; *Sluss*, 899 F. Supp. 2d at 41; *Weber v. United States Dep't of State*, 885 F. Supp. 2d 46, 53 (D.D.C. 2012)).

expatriate, the Secretary of State still would have the discretion to determine whether an individual has adequately renounced affiliation with the United States so as to trigger that right").

Finally, as already indicated, Tutora has not alleged that he has requested to renounce his citizenship from USCIS. Thus, to the extent that Tutora is attempting to bring a claim under the Administrative Procedure Act ("APA"), he has failed to state a claim.

In this regard, "[t]he APA . . . waives federal sovereign immunity in certain circumstances to allow equitable relief from agency action or inaction." *American Disabled for Attendant Programs Today v. United States Dep't of Housing and Urban Dev.*, 170 F.3d 381, 383 (3d Cir. 1999). The APA permits a lawsuit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13).

> Courts may "compel agency action unlawfully withheld or unreasonably delayed" or "hold unlawful and set aside agency action" that is determined to be "arbitrary, capricious, an abuse of discretion," or "short of statutory right." *Id.* § 706. The APA allows judicial review of agency actions unless the "(1) statute[ ] preclude[s] judicial review; or (2) [the] agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Whether an agency action falls under prong (2) and is "committed to agency discretion by law" is determined by a "construction of the substantive statute involved to determine whether Congress intended to preclude judicial review of certain decisions." *Heckler v. Chaney,* 470 U.S. 821, 828–29, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985).

*American Disabled for Attendant Programs Today*, 170 F.3d at 383–84.

With respect to claims that agency action has been "unlawfully withheld or unreasonably delayed," a complaining party must "assert[] that an agency failed to take a *discrete* agency

action that it is *required to take.*" *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis in original). Here, Tutora has failed to allege that the USCIS or the current respondent failed to take any action insofar as he has not alleged that he attempted to submit a renunciation request before filing the instant petition. Therefore, he has failed to assert a claim under section 706(1).[12]

### C. Leave to Amend

A district court should generally provide a *pro se* plaintiff (or petitioner) with leave to amend unless an amendment would be inequitable or futile. *See Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Here, Tutora has failed to name the proper respondent and has improperly attempted to renounce his United States citizenship by filing this petition here in the first instance. The only reason why the court would grant Tutora leave to amend his petition is to allow Tutora to possibly allege that he submitted his request to the USCIS and the USCIS has refused to act on the petition, but it is evident from his responses to the motion to dismiss that Tutora has not submitted a request to the USCIS and is attempting to use this action as a vehicle to do so. Therefore, the court finds that granting leave to amend would be futile.[13]

---

[12] To the extent applicable, Tutora has failed to state a claim and it is possible that this court lacks jurisdiction over Tutora's possible claim under the APA because he has not alleged a final agency action. A court will consider agency action as final if (1) "the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations omitted). Since Tutora has not alleged that he requested to renounce his citizenship before USCIS or that USCIS acted upon this request, there is no final agency action from which he can seek judicial review. *See Naik v. Director U.S. Citizenship and Immigration Servs. Vermont*, 575 F. App'x 88, 91-92 (3d Cir. 2014) (per curiam) (affirming district court decision granting motion to dismiss for lack of subject-matter jurisdiction insofar as there was no final agency action). *But see Trudeau v. FTC*, 456 F.3d 178, 183-84 (D.C. Cir. 2006) (explaining that "the APA's final agency action requirement is not jurisdictional" (citing *Center for Auto Safety v. NHTSA*, 452 F.3d 798, 805 (D.C. Cir. 2006)).

[13] Although not referenced in the motion to dismiss, other courts addressing actions either under the APA, the Mandamus Act, or even the Declaratory Judgment Act, have noted that part of the administrative procedure for renouncing citizenship under subsection (a)(6) involves a personal appearance before the Attorney General's designee. For example, a district court previously described USCIS's correspondence with a prisoner plaintiff seeking to renounce under subsection (a)(6) as follows:

### D. Tutora's Motions for Default Judgment

Tutora has filed two motions for default judgment seemingly on the premise that the respondent improperly responded to his expatriation petition by filing a motion to dismiss instead of either forwarding his petition to the proper government officials or otherwise moving toward granting him a renunciation ceremony. Even if Tutora had properly moved for the entry of default under the Federal Rules of Civil Procedure (which he has not), he has not asserted any cognizable basis that would warrant the entry of a default judgment in this case. Accordingly, the court will deny Tutora's motions for a default judgment.

---

> [In response to Plaintiff's request to renounce under subsection (a)(6),] USCIS indicated that USCIS could not proceed with his request, and that to "renounce U.S. citizenship while present in the United States, a person must appear for an interview in person at a designated USCIS office." . . . USCIS also stated that "USCIS will not interview potential renunciants by phone or video link, and will not travel to prisons or jails to conduct renunciation interviews." . . . USCIS advised Plaintiff that upon completion of his term of incarceration, Plaintiff could resubmit his renunciation request and submit evidence to show that he had satisfied the legal requirements of renunciation.

*Kwok Sze v. Johnson*, 172 F. Supp. 3d 112, 115–16 (D.D.C. 2016) (internal record citations omitted), *aff'd sub nom.*, *Kwok Sze v. Kelly*, No. 16-5090 (D.D.C. 2017).

Many courts that have addressed actions brought under subsection (a)(6) have determined that prisoners are unable to perform the acts necessary to renounce their citizenship. *See, e.g.*, *Keene*, 2016 WL 2343250, at * 3 ("Plaintiff is prevented by his incarceration from meeting the additional statutory requirement that he make a personal appearance before an Attorney General designee."); *Frazier v. United States Citizenship and Immigration Servs.*, No. 12-cv-14533, 2012 WL 5392317, at *1 (E.D. Mich. Nov. 5, 2012) ("Plaintiff has lost his right to renounce his citizenship while he is incarcerated. Until he has served his sentence, he will not be free to perform those acts needed to renounce his citizenship."); *Bradford v. LeBlanc*, No. 12-0427-BAJ-DLD, 2012 WL 5364255, at *2 (M.D. La. Sept. 19, 2012) ("[C]onsidering the plaintiff's current state of incarceration, it does not appear that he has the capacity to renounce his citizenship under 8 U.S.C. § 1481(a)."), *R. & R. adopted by*, 2012 WL 5364262 (M.D. La. Oct. 31, 2012); *Hood v. United States*, No. 2:11CV334-WKW, 2011 WL 6440511, at *1 (M.D. Ala. Dec. 2, 2011) (determining that prisoner plaintiff could not formally renounce his citizenship while he was incarcerated); *Persson v. United States Dep't of State*, No. ED CV-11-0377-GAF (PJW), 2011 WL 1464387, at*2 (C.D. Cal. Mar. 22, 2011) ("There is no way for Plaintiff to formally renounce his citizenship while he is incarcerated in the United States and he does not have the right to travel to another country while he is incarcerated in order to renounce his citizenship."); *Koos v. Holm*, 204 F. Supp. 2d 1099, 1108 (W.D. Tenn. 2002) (explaining that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system" and that "[a]s [the plaintiff] is a prisoner at this time, he may not exercise [the] right" to renounce his citizenship under section 1481" (citations and internal quotation marks omitted)); *see also Turner*, 5 F. Supp. 3d at 119-20 (noting that DHS had responded to the plaintiff prisoner's renunciation request by indicating that it denied the request because he could not appear for an in-person interview at a USCIS office, and determining that because the government agreed to hold open the plaintiff's case until his release from prison, the plaintiff's request for mandamus relief was moot); *Duncan v. United States Dep't of State*, No. 7:08-cv-00564, 2008 WL 4821323, *2 (W.D. Va. Oct. 30, 2008) ("Moreover, courts have uniformly held that an incarcerated citizen has no right to compel governmental officials to transport him out of the country in order to facilitate his renunciation of citizenship."). Therefore, it does not appear that Tutora will be able to formally renounce his citizenship under section 1481 until he has completed his term of incarceration.

## III. CONCLUSION

As explained above, Tutora has brought this expatriation petition seemingly in an attempt to evade the administrative processes attendant to a United States citizen's request to renounce his or her citizenship under 8 U.S.C. § 1481(a)(6). Only USCIS, in the first instance, may consider such a request and Tutora has not alleged that he has filed such a request with USCIS or that USCIS has denied his request to renounce his United States citizenship. It is also apparent from Tutora's submissions in response to the respondent's motion to dismiss that he has not filed any such request to date and does not believe that he has to do so (in part because he has filed this action). Because Tutora is proceeding *pro se*, the court has liberally interpreted the petition to conceive of any claim that Tutora could maintain here. It appears that there is no such claim and, as such, Tutora has failed to state a claim upon which relief could be granted. *See, e.g., Walker v. Holder*, 714 F. Supp. 2d 44, 47-48 (D.D.C. 2010) (granting defendants' motion to dismiss under Rule 12(b)(6) because the plaintiff agreed that even though he wrote to the defendants to inquire "about the renunciation process, . . . he has not alleged that he applied to Homeland Security or DOJ to renounce his citizenship and was denied"). Accordingly, the court will dismiss the expatriation petition with prejudice. Tutora may still proceed to submit his renunciation request to USCIS in the first instance.

BY THE COURT:

_____
EDWARD G. SMITH, J.